IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERMEL T. BROWN, | )<br>) |
| Plaintiff | ) Case No. 1:18-cv-00347 (Erie)<br>) |
| vs. | )<br>) |
| | ) RICHARD A. LANZILLO |
| JOHN E. WETZEL, MICHAEL D.<br>OVERMYER, DEREK F.<br>OBERLANDER, JOHN W. SAWTELLE,<br>ERIN W. IRELAND, KEVIN C. COWEN,<br>HASPER, THOMAS MURIN, JASON<br>G. COCHRAN, JADLOCKI,<br>CONSTANZO, R. WONDERLING,<br>MILLER, DOUGLAS M. BEATY, | ) UNITED STATES MAGISTRATE JUDGE<br>)<br>)<br>) MEMORANDUM OPINION AND<br>) ORDER ON DEFENDANT HASPER'S<br>) MOTION TO DISMISS [ECF NO. 16]<br>)<br>)<br>) |
| Defendants | ) |

I.  Introduction

Plaintiff Jermel T. Brown (Brown) commenced this *pro se* civil rights action on November 7, 2018. His Complaint asserts claims against numerous individuals employed by the Pennsylvania Department of Corrections (DOC Defendants) and Dr. Hasper, a psychiatrist who provided mental health services at the State Correctional Institution at Forest (SCI-Forrest), where Brown has been incarcerated. ECF No. 3. The DOC Defendants filed an Answer to Brown's Complaint. ECF No. 11. Dr. Hasper filed the instant Motion to Dismiss the claims against him. ECF No. 16. Because Dr. Hasper's motion relied upon matters outside of Brown's Complaint, pursuant to Fed. R. Civ. P. 12(d), the Court has converted the motion to a motion for summary judgment. For the reasons discussed below, the Court will grant the motion.[1]

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge in this case, including the entry of final judgment. *See* 28 U.S.C. § 636.

1

II. The Complaint and the Procedural History

Brown's complaint identified Dr. Hasper as "a psychiatrist of the Pennsylvania Department of Corrections who, at all times mentioned in this Complaint, held the rank of psychiatrist and was assigned to SCI Forest." ECF No. 3, ¶ 10. The Complaint alleged that after being transferred to SCI Forest from SCI Houtzdale, Brown was placed in the Restricted Housing Unit (RHU) where he was subjected to a "toxic environment." *Id.* at ¶ 19. The Complaint further alleged that Brown's mental state "decreased rapidly" on account of this environment, that his continued assignment to that housing unit "was driving him crazy," and that it caused him "mental anguish." *Id.* at ¶¶ 58, 61.

The Complaint also alleged that, after an incident involving pepper spray, he spoke with Dr. Hasper. *Id.* at ¶ 86. Later, Brown attempted suicide and was placed in a mental health unit at the prison. *Id.* at ¶¶ 110, 122, 126. He faults Dr. Hasper for not instructing prison personnel to permit him to shower. *Id.* at ¶ 126. Brown further alleged that Dr. Hasper incorrectly diagnosed his condition, failed to report what Brown had told him, and attempted to keep Brown in the RHU. *See, e.g., id.* at ¶ 181. Brown's theory of liability is that Dr. Hasper's alleged conducted violated his rights under the Eighth Amendment to the United States Constitution.

Dr. Hasper filed his Motion to Dismiss on June 3, 2019. ECF No. 16. Dr. Hasper's brief attached several exhibits in support of his argument that Brown's claims against him should be dismissed based upon his failure to exhaust administrative remedies. *See* ECF No. 17-1, ECF No. 17-2, ECF No. 17-3. Because these documents are outside the pleadings, the Court has converted Hasper's motion into a motion for summary judgment. Consistent with *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010), the Court notified Brown by order dated June 4, 2019 that the pending motion to dismiss may be treated, either in whole or in part, as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 18.

Brown has not filed a response to Dr. Hasper's motion, and the docket belies any argument that he was unaware of the motion. On June 20, 2019, Brown filed a motion for extension of time to file a response, in which he specifically referenced Dr. Hasper's "motion to dismiss and motion for summary judgement." ECF No. 19. The Court granted Brown's motion on June 26, 2019 and extended the deadline for Brown to file a response to the motion to July 13, 2019. ECF No. 20. On July 9, 2019, Brown filed another motion for an extension of time to file his response. ECF No. 21. He asserted that he had not received a copy of Dr. Hasper's motion. *Id.* At the same time, Brown filed a motion asking the Court to order Dr. Hasper to re-serve his motion to dismiss. ECF No. 22. He also asked the Clerk of Court to send him a copy of the motion. ECF. No. 23. Although the Court denied these motions, it granted Brown additional time to respond and, out of an abundance of caution, mailed him a copy of Hasper's motion, supporting brief, and accompanying exhibits. ECF No. 25 (and accompanying internal docket entry). On August 13, 2019, Brown filed yet another motion for extension of time, which the Court granted. *See* ECF No. 26; ECF No. 27. This extension made Brown's response due by August 3, 2019. ECF No. 27. No responsive filing was received by that date.

On November 19, 2019, the Court entered an order directing Brown to show cause regarding his failure to respond to Dr. Hasper's motion. *See* ECF No. 28. Brown then filed a response asserting that although he had received Dr. Hasper's motion, he had been unable to respond to its arguments because of his solitary confinement. *See* ECF No. 29, p. 1. Out of an abundance of caution, the Court again forwarded a copy of Dr. Hasper's motion and supporting filings to Brown and granted him an additional two-weeks to file a response. ECF No. 30. Although that order was entered on February 11, 2020, and to date, the Court has not received a response from Brown.

3

III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary

4

judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

The summary judgment standard, as recounted above, "is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not however, rely solely on his complaint to defeat a summary judgment motion." *Miller v. McClure, et al.*, 2020 WL 1049750, *6 (W.D. Pa. Mar. 4, 2020) (citing *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.")). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment."). Here, Brown has filed nothing in opposition to Dr. Hasper's motion.

Finally, the Court acknowledges that it "may not grant an uncontested summary judgment motion without an independent determination that the movant is entitled to judgment under Fed. R. Civ. P. 56." *Hitchens v. County of Montgomery*, 98 Fed. Appx. 106, 110 (3d Cir. 2004). But, "[b]y failing to respond ... 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003). Accordingly, in evaluating whether Dr. Hasper is entitled to judgment as a matter of law, the Court will accept his factual assertions to the extent they are properly supported by the record.

5

For the reasons discussed below, the Court finds that no genuine issue of material fact remains for trial regarding Dr. Hasper's exhaustion defense and that Dr. Hasper is entitled to judgment as a matter of law based upon that defense.[2]

IV. Discussion

A. Exhaustion of Administrative Remedies under the PLRA

Dr. Hasper argues that, prior to filing this action, Brown failed to exhaust his administrative remedies as to all claims against him as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). ECF No. 17, p. 3. "Failure to exhaust is an affirmative defense the defendant must plead and prove..." *Small v. Camden Cty.*, 728 F.3d 265, 268–69 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 212, 216–17 (2007)). Based upon the record, the Court agrees that as to Dr. Hasper, Brown failed to comply with the exhaustion requirements of the PLRA.

The PLRA provides: "no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. *Grimsley v. Rodriquez*, 1997 WL 235613 (10th Cir. May 8, 1997). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action

---

[2] Because the Court has concluded that Dr. Hasper is entitled to summary judgment based upon Brown's failure to exhaust his administrative remedies, it need not reach Dr. Hasper's alternative arguments for summary judgment.

6

shall be brought," Congress has "clearly required exhaustion"). Indeed, the United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." *Ross v. Blake*, —— U.S. ——, 136 S. Ct. 1850, 1856 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). *Accord Jones v. Bock*, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [ ] [special] circumstances into account." *Ross*, 136 S. Ct. at 1856. Further, exhaustion is required regardless of the availability of the requested relief or the nature of the underlying claim, including claims alleging violations of the Constitution. *Id.* at 1857 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)); *Porter*, 534 U.S. at 520; *Woodford*, 548 U.S. at 91.

To satisfy the PLRA, the plaintiff's exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes ... before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures.'" *Id.* at 89 (quoting *McCarthy*, 503 U.S. at 145). Thus, where the grievance process expressly requires the identification of named defendants, or the use of specified appeal forms, or even the signature of an inmate, an inmate's failure to comply as instructed constitutes a procedural default and a failure to properly exhaust the grievance process. *See, e.g., Rosa-Diaz v. Dow*, 683 Fed. Appx. 103, 105–06 (3d Cir. 2017) (inmate's failure to name particular defendant in grievance related to assault did not exhaust grievance process where grievance policy required identification of defendants); *Small v. Lanigan*, 656 Fed. Appx 586, 589–90 (3d Cir. 2016) (prisoner's use of correspondence to appeal grievance denials was not authorized process and constituted procedural default, despite the fact that some of his letters were answered); *Walker v. Glunt*, 654 Fed. Appx 531, 534 (3d Cir. 2016) (prisoner failed to sign his grievance, and signature held to constitute an important procedural requirement set by the institution); *Mack v.*

7

*Klopotoski*, 540 Fed. Appx 108, 113 (3d Cir. 2013) (finding procedural default where inmate failed to provide photocopies of grievances and responses received to date to pursue internal appeal).

          1.     The Administrative Process Available to State Inmates

So then, analysis of exhaustion requirements in this case must begin by identifying the administrative process available to state inmates. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The DC-ADM 804 grievance system available to state prisoners consists of three separate stages. First, the prisoner must timely submit a written grievance for review to the facility manager or the regional grievance coordinator within fifteen days of the incident, and the facility manager or grievance coordinator will respond in writing within ten business days. Second, if the grievance is initially denied, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate will receive a written response within ten working days. Finally, if the intermediate appeal is denied, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 292 (3d Cir. 2000), *aff'd*, 532 U.S. 731, (2001).

          2.     Analysis

In support of his argument that Brown failed to exhaust administrative remedies as to all claims against him, Dr. Hasper has submitted copies of all records produced by the DOC Secretary's Office of Inmate Grievances and Appeals (SOIGA) in response to his subpoena. ECF No. 17-3. These records consist of eighty-one pages of documents related to thirteen grievances that Brown

8

filed during the relevant period.[3] Dr. Hasper is mentioned only three times in the entire grievance record. First, in Grievance 646960, Brown stated that he "fear[ed] for his life ... I've told PSYCH's and Dr. Hasper." *Id.* at p. 22. In Grievance 761240, Brown again mentioned Dr. Hasper in connection to an incident that occurred while Brown was housed in "Unit K, B Pod:" "I informed Cowen, Sheeshey, Hasper ... and no action was taken." *Id.* at p. 65. The final reference to Dr. Hasper is found in Grievance 760858. There, Brown complained about the condition of his cell, stating he "was kept in these conditions under Dr. Hasper." *Id.* at 77.

        a.        Grievance Number 646960

Brown filed Grievance 646960 on October 25, 2016. ECF No. 17-3, p. 26. That Grievance pertained to the alleged use of excessive force against him on October 3, 2016. *Id.* The Grievance was denied on November 15, 2016 by Lt. D. Miller. *Id.* Brown then filed an appeal to the facility manager on November 23, 2016. *Id.* at 27. Although the facility manager's response does not appear to be part of the record, Brown's appeal was apparently denied. When Brown attempted to appeal the facility manager's decision, the SOIGA rejected his appeal because he did not provide a copy of the superintendent's response. *Id.* at 23. Brown challenged this determination on February 20, 2017, stating that he "did not receive a super intent (sic) response so I went to the next stage well over the 15 days for that response." *Id.* at 20.

Assistant Chief Grievance Officer Keri Moore responded:

> Upon review of the last documents you sent to this office, you did indicate in your appeal that you did not receive a response from the superintendent to your appeal. That was missed the first time and I apologize for that. I contacted Ms. Resher at SCI Forest and asked if you had wrote to her at all about not receiving the superintendent's response and she said she has no record of receiving any type of communication from you indicating such. Records reflect that the superintendent responded to your appeal on 12/14/16. You were granted an extension of time by this office on 1/10/17 which gave

---

[3] The record itself is, at times, difficult to review. For example, some of the grievances are not numbered. *See* ECF No. 17-3, p. 21 (no grievance number indicated). Other filings are almost illegible. *See, e.g.*, ECF No. 17-3, p. 37.

9

> you until 1/31/17 to provide this office with all of the required
> documents. At this time, if you did not receive the superintendent's
> response, you should have contacted Ms. Resher in regards to the
> superintendent's response. Therefore, while there was a procedural
> error, you still have not provided this office with the superintendent's
> response and a new appeal to final review, you just wrote indicating
> that you never received the superintendent's response. Therefore,
> the dismissal stands.

ECF No. 17-3, p. 19. Brown's failure to secure the superintendent's response and forward it to final review did not comply with the applicable grievance appeals procedures and, as a result, Grievance 646960 was not exhausted and cannot support any claim against Dr. Hasper in this action.

In addition, Grievance 646960 also failed to exhaust administrative remedies as to any claim against Dr. Hasper because it did not seek any relief from him or charge him with the underlying claim, *i.e.*, excessive force. Grievance 646960 asserted an excessive force claim based upon SCI Forest personnel's use of pepper spray and their failure to provide him any means of de-toxification. *See, e.g.*, ECF No. 17-3, p. 20 ("I was tortured by SCI Forest Staff ... they sprayed me and did not give me anything to wipe my private area, a shower or anything – see grievance copy."). Brown made no claim that Dr. Hasper participated in this action. The DC-804 Official Inmate Grievance form expressly instructs inmates to "state all relief that you are seeking." *See, e.g.*, ECF No. 17-3, p. 21; *Jones v. Lindler*, 2012 WL 1020279, *1 (M.D. Pa. Mar. 26, 2012) (grievance form contained no statement for relief despite instructions to "state all relief that you are seeking"). And this Court has held that the relief requested in an inmate's grievance must be stated "with specificity." *Wright v. Sauers*, 2017 WL 3731957, *7 (Aug. 30, 2017) (quoting *Spruill v. Gillis*, 372 F.3d 218, 233-234 (3d Cir. 2004)). As relief, Grievance 646960 asked that "Lt. Murin, CO2 Cochran, CO1 Lutz, and CO1 Jadlocki" be removed from J Unit. *See* ECF No. 17-3, p. 26. But it did not ask for any relief from Dr. Hasper. Accordingly, it did not exhaust any claim against him. *See Preacher v. Overmyer*, 2020 WL 43420, *8 (W.D. Pa. Jan. 3, 2020) ("[A]n inmate who "desires compensation or other legal relief

10

normally available from a court" must "request the relief with specificity in his/her initial grievance.") (citation omitted).

b. Grievance 761240 and Grievance 760858

The grievance record demonstrates that the other two grievances in which Brown mentions Dr. Hasper were likewise dismissed due to his failure to comply with multiple procedural requirements. For example, Brown's Grievance 761240 was dismissed because Brown did not submit it within 15 working days of the events upon which the claims were based and because the grievance improperly included multiple complaints that were required to be grieved separately. ECF No. 17-3, p. 64. This Grievance was dated September 21, 2018, and challenged certain events that took place between January 20-30, 2017. *Id.* at 65. In the section of the grievance form that asks inmates to "list actions taken and staff you have consulted before submitting this grievance," Brown included Dr. Hasper among the staff he informed. Brown states that he was "sent to POC" on February 1, 2017, "not to return to normal routine until 9/4/18." *Id.* Still, Brown did not file this Grievance for seventeen days (September 4, 2018, to September 21, 2018). Thus, it was filed too late and Brown is procedurally barred from suing Dr. Hasper based upon this grievance. In addition, the relief Brown requested in the grievance was that he "be released to the RTU at Camp Hill, Rockview, or Phoenix." *Id.* He did not ask for monetary damages or any other relief against Dr. Hasper that he now claims in this action.

Grievance 760858 was also properly rejected as untimely. Brown filed this grievance on September 13, 2018. It related to the use of pepper spray and the conditions in which he had been housed. *Id.* at pp. 76-77. These events at issue took place on February 3, 2017. *Id.* L. Reeher, the facility grievance coordinator, rejected this Grievance on September 21, 2018. *Id.* at 78. Brown then appealed to the facility manager, Michael Overmyer, who denied his appeal on October 23, 2018. *Id.*

11

at 80. Brown then filed an appeal to SOIGA. *Id.* at 81. He claimed not to have been able to file a grievance until September 10, 2018. *Id.* The SOIGA rejected Brown's final appeal, noting:

> [T]his review concurs that the grievance was very untimely. Inmates can file a grievance while housed at a different DOC facility. Additionally, your appeal to the Superintendent was received on 10/2/18 and provided response on 10/23/18. The response was timely. Future correspondence regarding this grievance may be filed without action or response.

*Id.* at p. 76. Brown points to no evidence to counter SOIGA's conclusions. As noted above, untimely "or otherwise procedurally defective administrative grievance[s] or appeal[s]" do not satisfy the PLRA's mandatory exhaustion requirement. *See Woodford*, 548 U.S. at 83; *see also Spruill*, 372 F.3d at 230. The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *See Saleem v. Brungart*, 2020 WL 1130347, *4 (M.D. Pa. Mar. 6, 2020) (citing *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004) (other citation omitted)). Such a procedural default by the prisoner, either through late or improper filings, prevents the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). Therefore, although Brown pursued this grievance to the final administrative stage, he is nonetheless procedurally barred from suing Dr. Hasper based upon this grievance.

In sum, procedural defects prevented each of Brown's grievances from properly exhausting his administrative remedies as to his claims against Dr. Hasper. *See Woodford*, 548 U.S. at 89; *Spruill*, 372 F.3d at 222, 231. Brown does not point to any evidence to excuse these failures. Having properly raised and supported these failures in his motion, Dr. Hasper is entitled to the entry of summary judgment in his favor.[4]

---

[4] Notably, if Brown had demonstrated that prison authorities prevented him from timely filing, he may have been able to proceed here. *See, e.g., Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002) (holding that an administrative remedy is not "available" under the PLRA where prison authorities thwart a prisoner's efforts to exhaust administrative remedies). Brown has not done so.

12

V.  Conclusion

Defendant Hasper's motion to dismiss (ECF No. 16), which the Court has treated as a motion for summary judgment, is granted. The Clerk of Court shall terminate this action as to Dr. Hasper. An appropriate order will follow.

Entered this 16th day of March, 2020.

_____
RICHARD A. LANZILLO
United States Magistrate Judge